UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY GORDON RUSSELL,<br><br>Plaintiff,<br><br>v.<br><br>SIEMENS INDUSTRY SOFTWARE INC.,<br><br>Defendant. | Case No. 23-cv-03884-LJC<br><br>**ORDER DENYING MOTION TO VACATE STAY AND WITHDRAW FROM ARBITRATION**<br><br>Re: Dkt. No. 26 |

## I.   INTRODUCTION

The parties to this employment dispute previously stipulated to stay the case and proceed in arbitration before JAMS based on an arbitration agreement that Plaintiff Kelly Gordon Russell entered with a predecessor-in-interest to Defendant Siemens Industry Software Inc. (Siemens) in 2008.  Russell now moves to vacate that stay and resume litigation in this Court under section 1281.98 of the California Code of Civil Procedure.  This provision provides that a party that drafted an arbitration agreement materially breaches the agreement and defaults in arbitration if that party fails to pay arbitrators' fees on a timely basis.  Cal. Civ. Proc. Code § 1281.98.  The parties dispute the application of that law to the facts of this case, whether it is preempted by the Federal Arbitration Act (FAA), and whether Plaintiff's arguments are properly directed to this Court or must be presented to an arbitrator.  The Court held a hearing on October 11, 2024.

Although Siemens argued in its opposition brief that any application of section 1281.98 has been delegated to an arbitrator under the parties' agreement and JAMS's rules, Siemens agreed with Russell at the hearing that the Court should address the question of preemption.  The Court concludes that the FAA preempts section 1281.98 and DENIES Russell's Motion on that basis, without prejudice to any argument that Russell might raise to the arbitrator regarding the effect of Siemens's delayed payment under the JAMS rules or generally applicable principles of

breach, default, or waiver.[1]

## II. BACKGROUND

### A. Relevant Statutes

As context for the procedural history of the case and the parties' arguments, the Court briefly addresses the two statutes primarily at issue: section 1281.98 of the California Code of Civil Procedure, which Russell contends grants him a right to withdraw from arbitration and proceed with litigation in this Court, and the Federal Arbitration Act, which Siemens contends preempts any such application of section 1281.98.

#### 1. Section 1281.98

The California legislature enacted section 1281.98 of the California Code of Civil Procedure in 2019, establishing that late payment of arbitration fees in certain contexts constitutes a material breach of an arbitration agreement and allows certain parties to proceed with litigation notwithstanding such an agreement.

Specifically, when "an employment or consumer arbitration . . . requires . . . that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding," the drafting party's failure to do so "within 30 days after the due date" places that party "in material breach of the arbitration agreement" and "in default in arbitration," such that the drafting party "waives its right to compel the employee or consumer to proceed with that arbitration." Cal. Civ. Proc. Code § 1281.98(a)(1). An arbitration provider's invoice for such fees "shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day." *Id.* § 1281.98(a)(2). Unless the parties have agreed on a different deadline, "the arbitration provider shall issue all invoices to the parties as due upon receipt." *Id.*

If the drafting party fails to pay fees when due as discussed above, the employee or consumer may, among other options, "[w]ithdraw the claim from arbitration and proceed in a

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

court of appropriate jurisdiction." *Id.* § 1281.98(b)(1).[2]

Section 1281.97 of the California Code of Civil Procedure provides a similar right for an employee or consumer to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" when the drafting party fails to pay fees required "to *initiate* an arbitration proceeding" within thirty days (as distinct from fees that come due *during* arbitration, which are governed by section 1281.98). Cal. Civ. Proc. Code § 1281.97(a)(1), (b)(1) (emphasis added). Russell does not rely on section 1281.97 here, but both parties cite caselaw addressing that statute in addition to cases applying section 1281.98, and the Court finds the two statutes materially similar for the purpose of preemption analysis.

### 2. The Federal Arbitration Act

The Federal Arbitration Act (FAA) states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4 [regarding disputes related to sexual harassment or assault].

9 U.S.C. § 2. When claims brought in a judicial action are subject to an arbitration agreement, courts must stay those claims upon application of any party "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." *Id.* § 3.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). It "thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Id.* Although the FAA "embodies the national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

---

[2] The consumer or employee may also move to recover "all attorney's fees and costs associated with the abandoned arbitration proceeding," among other sanctions. *Id.* § 1281.98(c). Russell has not brought such a motion here.

3

1  not agreed so to submit," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation
2  omitted).
3     "The FAA contains no express pre-emptive provision, nor does it reflect a congressional
4  intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland*
5  *Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). As with any federal statute, however, the FAA
6  may nevertheless preempt state law "to the extent that it actually conflicts with federal law—that
7  is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full
8  purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidson*, 312 U.S. 52, 67 (1941)).
9  One means by which a state law may conflict with the FAA, and thus be preempted, is if it
10 violates the "equal-treatment principle"—rooted in § 2's acknowledgment of defenses applicable
11 to "any contract"—that state laws may not create grounds for invalidating arbitration agreements
12 "that 'apply only to arbitration or that derive their meaning from the fact that an agreement to
13 arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)
14 (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Viking River*
15 *Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022).

### B. Facts and Procedural History

When Russell began working for Siemens's predecessor, Mentor Graphics Corporation (Mentor), in 2008, he was required to sign an arbitration agreement as part of his onboarding process. ECF No. 30-2, ¶ 2. The arbitration agreement provided that any dispute Russell had with Mentor (other than for workers compensation, unemployment benefits, or injunctive relief) "shall be submitted to and resolved by final and binding arbitration . . . conducted under the rules and procedures of JAMS (formerly known as Judicial Arbitration & Mediation Services, Inc.) or its successor, before a mutually agreed upon neutral arbitrator selected in accordance with the JAMS Employment Arbitration Rules or their equivalent." ECF No. 26-1 at 8.[3] The arbitration agreement also provided that "[e]ach party will be responsible for its own attorney's fees and other costs." *Id.* Russell and a human resources officer of Mentor both signed a physical copy of the

---

[3] Citations to documents filed in the docket of this case refer to page numbers as assigned by the Court's ECF filings system.

arbitration agreement. *Id.*

At the time, Russell had never been involved in litigation or arbitration, did not know what arbitration was, had never heard of the JAMS arbitration agency, and was unfamiliar with its rules or how to access them. ECF No. 30-2, ¶ 2. Currently applicable JAMS rules include the following:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*See* ECF No. 27-1 at 42 (Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures).[4] The JAMS rules also provide that "the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing," and that "[d]isputes concerning the appointment of the Arbitrator shall be resolved by JAMS." ECF No. 27-1 at 42 (JAMS Rule 11(a), (c)).

Russell remained employed at Mentor until he resigned in 2020. *See* ECF No. 1-1 at 10, ¶ 9. Later, before this litigation began, Siemens acquired Mentor. *See id.* at 9, ¶ 6.

On June 27, 2023, Russell filed a complaint in the California Superior Court for the County of Alameda asserting a claim for whistleblower retaliation and constructive discharge

---

[4] Siemens submitted a copy of the JAMS Comprehensive Rules & Procedures with its opposition brief, which by their terms apply when parties enter an agreement "for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules." ECF No. 27-1. Although Russell argues that a provision of JAMS rules is not sufficiently clear and conspicuous to establish agreement to delegate threshold issues of arbitrability, he did not object to the rules that Siemens offered or argue that they are not applicable. Russell's attorney's reply declaration accurately characterizes the parties' agreement as providing for arbitration to be "conducted under the rules of JAMS or its successor," and goes on to discuss the Comprehensive Rules submitted by Siemens. ECF No. 30-1, ¶ 3. To the extent that the arbitration agreement's reference to *selection of an arbitrator* under the "JAMS Employment Arbitration Rules or their equivalent" could perhaps be construed as adopting those rules for conducting the arbitration more generally, *see* ECF No. 26-1 at 8, the Court notes that JAMS's current Employment Arbitration Rules & Procedures include delegation provisions that are materially identical to the relevant provisions of the Comprehensive Rules addressed by the parties. *See* Rule 11, JAMS Employment Arbitration Rules & Procedures (June 1, 2021) *available at*
https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2021.pdf.

5

1    under of section 1102.5 of the California Labor Code. ECF No. 1-1 at 8–22 (Compl., as attached

2    to Siemens's Notice of Removal). Siemens removed to this Court based on diversity jurisdiction

3    under 28 U.S.C. § 1332(a). *See generally* ECF No. 1.

4            On October 27, 2023, the parties filed a stipulation to stay the case and submit it to

5    arbitration "pursuant to the Arbitration Agreement, before a JAMS arbitrator mutually agreed

6    upon by the parties." ECF No. 17 at 4. The stipulation acknowledged that Russell's assent to it

7    was based on Siemens's representation that Russell had never entered a subsequent agreement

8    superseding the arbitration agreement at issue. *Id.* at 2. It also stated the parties' agreement "that

9    the matter will be submitted to binding arbitration pursuant to the terms of the Arbitration

10   Agreement, the only exception being that the term purporting to require each Party to bear its own

11   attorneys' fees and costs shall not deprive either Party to [sic] a statutory right to recover fees and

12   costs." *Id*.

13           The parties failed to attach the arbitration agreement at issue to their stipulation (despite

14   referencing it as "Exhibit A," *see id.*), but there is no dispute that the arbitration agreement Russell

15   signed in 2008 was the agreement on which they based their stipulation, and both parties have now

16   filed identical copies of that agreement. ECF No. 26-1 at 8; ECF No. 27-1 at 5.

17           The Court adopted the parties' proposed order on November 1, 2024, staying the case and

18   ordering arbitration to proceed before a JAMS arbitrator in accordance with the parties'

19   agreement.

20           Russell submitted a demand for arbitration on the same day the Court stayed the case and

21   paid his share of the arbitration filing fee, and Siemens paid its share of the filing fee on

22   November 22, 2023. ECF No. 26-1, ¶ 4; ECF No. 27-1, ¶ 7. On November 29, 2023, JAMS sent

23   the parties a notice of commencement of arbitration that, among other things, advised the parties

24   to "see California Code of Civil Procedure sections 1281.97–1281.99 regarding payment of fees

25   for the arbitration." ECF No. 26-1, ¶ 5 & p. 23. The parties submitted materials related to

26   selection of an arbitrator, and on January 9, 2024, JAMS emailed Siemens a demand for payment

27   of an additional $8,000 as a deposit for the services of the Hon. Lynn O. Taylor (Ret.), due upon

28   receipt. ECF No. 26-1, ¶ 6 & pp. 25–26; ECF No. 27-1, ¶ 9 & p. 16. In Siemens's attorney's

experience, JAMS does not normally send an invoice for such fees before it provides notice of appointment of an arbitrator and relevant disclosures, which JAMS did not provide at that time. ECF No. 27-1, ¶ 9. Siemens did not immediately pay that invoice.

All of the following occurred on February 13, 2024, thirty-five days after JAMS sent the invoice: (1) Russell's counsel notified Siemens's counsel that the invoice had not been paid within the thirty days allowed by section 1281.98, and that Russell intended to file a motion to vacate the referral for arbitration under that statute, ECF No. 26-1, ¶ 9; (2) Siemens paid JAMS $8,000 to satisfy the invoice, ECF No. 27-1, ¶ 11; and (3) JAMS sent the parties a notice of appointment of Judge Taylor as the arbitrator dated January 8, 2024, noting that it had not previously been uploaded to the JAMS case website due to a technical error, ECF No. 27-1, ¶ 10.[5] The sequence of those events is not entirely clear from the record, but is not relevant to the outcome of the present Motion.

Siemens requested that the parties mediate before raising any dispute of whether Russell could withdraw from arbitration, Russell agreed to do so, and the parties stipulated that the delay while the parties mediated would not affect Russell's right (if any) to withdraw from arbitration under section 1281.98. ECF No. 26-1, ¶ 13 & pp. 53–54. After three mediation dates were canceled based on Siemens's requests to postpone them, however, Russell filed his present Motion. ECF No. 26-1, ¶ 14.

### C. The Parties' Arguments

#### 1. Russell's Motion

Russell contends that under section 1281.98, Siemens breached the arbitration agreement and defaulted in arbitration by failing to pay the $8,000 invoice within thirty days of its due date. ECF No. 26 at 8–9. According to Russell, Siemens's reasons for missing the payment deadline are not relevant. *Id.* at 9–10.

Russell argues that the FAA does not preempt section 1281.98 (or its similar companion

---

[5] An invoice included with that notice and dated January 8, 2024 bears the caption of a different and apparently unrelated case, and seeks payment of $8,000 as a deposit for the services of a different arbitrator. ECF No. 27-1 at 21.

7

1  statute section 1281.97) because that state law is consistent with the FAA's purpose of promoting
2  efficient resolution of claims, citing several decisions from both district courts and California
3  appellate courts so holding, although he acknowledges that some decisions have reached the
4  opposite conclusion. *Id.* at 10–12.  Russell also notes that the Ninth Circuit has recognized that a
5  party's default in arbitration by non-payment of fees can be grounds to allow the opposing party
6  proceed in court notwithstanding an arbitration agreement, albeit without considering sections
7  1281.97 or 1281.98. *Id.* at 26 (citing *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003)).

### 2. Siemens's Opposition Brief

Siemens argues that the FAA preempts section 1281.98 both under the "equal footing" principle because the state law singles out arbitration agreements for different treatment than other contracts, ECF No. 27 at 10–11, and because it serves as an obstacle to the FAA's purpose by "discourag[ing] businesses from enforcing their otherwise valid arbitration agreements" and "ratcheting up the costs and risks of doing so," *id.* at 11–12.  Siemens asks this Court to follow recent decisions from this district and a California appellate court finding preemption. *Id.* at 12–14.  Siemens contends that the Ninth Circuit's decision in *Sink* is distinguishable because the arbitrator there granted an order of default, whereas here Siemens has now paid the amount due and no default has been entered. *Id.* at 14.

Even if the FAA does not preempt section 1281.98, Siemens argues that Russell cannot invoke its protection because Siemens never "compelled" arbitration in this case, and the parties instead stipulated to arbitration. ECF No. 27 at 14–15.  Siemens also argues that the invoice sent on January 9, 2024 was "invalid" because JAMS had not appointed an arbitrator at that time, or at least had not communicated the appointment of an arbitrator to the parties. *Id.* at 15–16. Alternatively, Siemens argues that its payment was timely because JAMS served the invoice electronically without Siemens's consent, which the Federal Rules of Civil Procedure do not permit, and which under the California Code of Civil Procedure would—according to Siemens— trigger an extra five days for Siemens to respond. *Id.* at 17 (citing Fed. R. Civ. P. 5(b)(2); Cal.

8

1  Civ. Proc. Code §§ "1010.6(a)(2)A)(ii)" (sic), 1013).[6]

2      Finally, Siemens contends that the question of whether Russell can withdraw from arbitration and proceed in this Court is not actually for the Court decide—despite the preceding ten pages of Siemens's brief presenting that issue to the Court—but instead must be decided by the arbitrator because the JAMS rules incorporated by the parties' arbitration agreement delegate threshold issues of arbitrability to the arbitrator. *Id.* at 17–19.

### 3. Russell's Reply

Russell's Reply includes arguments similar to those in his Motion that section 1281.98 is not preempted. ECF No. 30 at 4–5.

Russell contends that his stipulation to arbitration has no bearing on whether he can invoke section 1281.98, because the statute does not speak to the manner in which arbitration began, and at least one court has applied the statute where a party had previously stipulated to arbitrate. *Id.* at 6. Russell argues that he only agreed to arbitrate after reviewing the arbitration agreement, ensuring that no subsequent agreement had modified it, and deciding not to oppose Siemens's anticipated motion to compel. *Id.* In any event, he contends that the statute's purpose is to ensure that businesses engaged in arbitration against their employees or consumers timely pay their share of arbitration fees, so the question of how arbitration began is of no consequence. *Id.*

---

[6] The Court does not reach this issue, but notes for the record that Siemens's description of California law appears to be incorrect. The first statute Siemens cites, "California Code of Civil Procedure section 1010.6(a)(2)A)(ii)" (sic), does not exist. *Cf.* Cal. Civ. Proc. Code § 1010.6(a)(2) (prohibiting electronic service of a document "required to be served by certified or registered mail," and including no component subpart (A) or (A)(ii)). Section 1013(a) allows for a five-calendar-day extension "upon service by mail"—i.e., "the United States Postal Service"—when a document is sent within the state of California. *Id.* § 1013(a). Subpart (g) of that statute, however, separately provides for electronic service "pursuant to Section 1010.6 and the rules on electronic service in the California Rules of Court." *Id.* § 1013(g). Section 1010.6 allows electronic service of documents "in an action filed with the court," and provides only two additional court days for most deadlines running from a document served electronically. *Id.* § 1010.6(a), (a)(3)(B). This Court is not aware of authority supporting Siemens's assertion that "electronic service without prior consent is not considered complete until after 5 calendar days" in California state court proceedings, much less that such a rule would apply in arbitration. ECF No. 27 at 17; *cf. Suarez v. Superior Ct.*, 99 Cal. App. 5th 32, 40 (2024) ("[S]ection 1010.6 simply does not apply to the e-mail transmission of a JAMS fee invoice."). At the hearing, Siemens argued for the first time that JAMS Rule 8(f) provides for adding three calendar days after electronic service, but that rule, like section 1013(a), instead applies when service occurs "only by U.S. mail." ECF No. 27-1 at 41.

9

1    Russell argues that the invoice sent by email on January 9, 2024 included all information
2    required by section 1281.98(a)(2), and that defense counsel's past experience with other
3    documents JAMS typically provides with an invoice is no basis to declare the invoice invalid. *Id.*
4    at 6–7. Russell also contends that the JAMS rules (which allow for electronic service) govern
5    arbitration proceedings, so the provisions Siemens cites from the Federal Rules of Civil Procedure
6    and the California Code of Civil Procedure are not applicable, and Siemens was not entitled to an
7    extra five days to pay. *Id.* at 7–8.

8    As for delegating the question to an arbitrator, Russell asks this Court to follow a decision
9    from the Central District of California holding that such delegation would violate the terms of
10   section 1281.97. *Id.* at 8. He also argues that a provision "buried deep within [the] complex and
11   lengthy legal document" of the JAMS rules does not provide sufficiently clear notice of an
12   agreement to delegate threshold issues, particularly in light of the fact the Russell had no
13   experience with litigation or arbitration and was not aware of the JAMS rules when he signed the
14   arbitration agreement. *Id.* at 8–9.

## III. ANALYSIS

### A. The Court Need Not Resolve Delegation of Arbitrability

Questions of arbitrability, like "whether the parties agreed to arbitrate" a particular issue, must "be decided by the court, not the arbitrator," "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). That heightened standard for "threshold question[s]" stands in contrast to the "presumption of arbitrability" that a court would apply to decide whether any other issue fell within the scope of an arbitration agreement. *Id.* at 650. But the Supreme Court has emphasized that the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes," "so long as the parties' agreement does so by 'clear and unmistakable' evidence," even if a court considers the argument for arbitrability of the underlying dispute on the merits to be "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 69–71 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Waiver of a right to arbitrate falls within the category of

10

"gateway issues" that are decided by a court unless clearly delegated to an arbitrator. *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).

At least initially, the parties disputed whether their arbitration agreement served to delegate any application of section 1281.98 to an arbitrator. That question implicated a number of potential issues, such as whether breach of section 1281.98 is the sort of threshold issue that requires clear delegation, whether the California legislature intended to allow such delegation under section 1281.98, whether Russell's level of sophistication is relevant, whether he was sufficiently sophisticated at the time he signed the agreement in 2008, whether his and his counsel's sophistication at the time of the 2023 stipulation affects the inquiry, and whether Russell's arguments can be understood as attacking the delegation clause as distinct from the arbitration agreement as a whole. Courts have reached different outcomes—on varying factual and procedural records—as to whether alleged breach of section 1281.97 or section 1281.98 is for a court or an arbitrator to decide. *See, e.g.*, *Dekker v. Vivant Solar, Inc.*, No. 20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021) (enforcing delegation); *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 754 (N.D. Cal. 2022) (holding that the court must consider arguments that a delegation clause was itself unenforceable due to breach of section 1281.97); *Mesachi v. Postmates Inc.*, No. 3:20-cv-07028-WHO, 2021 WL 736270, at *4–5 (N.D. Cal. Jan. 8, 2021) (enforcing delegation); *Cvejic v. Skyview Cap., LLC*, 92 Cal. App. 5th 1073, 1079 (2023) (expressly disagreeing with *Dekker* and concluding that the "statute's intent for the trial court to decide this statutory issue controls," albeit based on an agreement that does not appear to have included a delegation clause).

The Court need not reach those questions here. At the hearing, Siemens's attorney conceded that "whether the statute is preempted" is an issue that the "Court could address in the first instance," and clarified that Siemens's delegation arguments focused on the *application* of section 1281.98 to the facts at issue and the JAMS rules.[7] That concession or clarification

---

[7] This case therefore differs from *Belyea*, where Judge Corley undertook detailed analysis of a delegation clause before turning to whether the FAA preempted section 1281.97. *See* 637 F. Supp. 3d at 754. In that case, the defendant had characterized preemption as one of the issues that the court had "no reason . . . to address [on] the merits" because the matter had been delegated to an arbitrator. Br. of Defs. in Opp'n, *Belyea v. Greensky, Inc.*, No. 20-cv-01693-JSC, ECF No. 178 at 10 (N.D. Cal. Aug. 17, 2022). Unlike in this case, there is no indication that the defendant in

11

1  occurred before any discussion of preemption that might have indicated the Court's tentative

2  views on that issue. On the other side, Russell has consistently argued that the Court, and not the

3  arbitrator, should resolve all aspects of his Motion. *See* ECF No. 30 at 8–9. In other words,

4  although the parties disagree as to whether some issues were effectively delegated to the arbitrator,

5  they agree that whether the FAA preempts section 1281.98 is for the Court to decide. The Court

6  therefore need not resolve whether the agreement could be understood as delegating that issue to

7  the arbitrator or whether such delegation would be enforceable. Even if that were so, the parties'

8  current agreement that the Court should decide preemption is sufficient to place that issue before

9  the Court. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (recognizing "the

10 fundamental principle that arbitration is a matter of contract").

### B. The FAA Preempts Section 1281.98

Section 2 of the FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4," which carves out sexual assault and sexual harassment claims. 9 U.S.C. § 2. The Supreme Court has interpreted § 2 as establishing "an equal-treatment principle: A court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (cleaned up); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (same, but referring to "defenses" that apply only to arbitration or derive their meaning from arbitration). The Supreme Court has therefore invalidated state laws including a Kentucky requirement for a "clear statement" of an attorney-in-fact's authority to enter arbitration agreements that did not apply to other authorities the attorney-in-fact might exercise, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017), a California unconscionability doctrine prohibiting class action waivers in certain contracts of adhesion, *AT&T Mobility*, 563 U.S. 333, and a Montana statute requiring notice of an arbitration agreement to be

---

*Belyea* ever conceded that preemption was an issue for the court to decide in the first instance.

12

displayed conspicuously on the first page of a contract, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996).

After section 1281.98 (and its materially similar companion statute, section 1281.97) took effect in 2020, early cases applying those laws held that they were not preempted by the FAA because imposing consequences for failure to pay arbitration fees on a timely basis promoted the FAA's purpose of speedy and efficient arbitration. *E.g.*, *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 783 (2022); *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 641 (2022).

In *Gallo*—a leading case cited by many of the subsequent decisions holding that sections 1281.97 and 1281.98 are not preempted—a California appellate court relied in part on the fact that the parties there had apparently agreed to incorporate the rules of the California Arbitration Act (CAA), which now includes the statutes at issue, in their arbitration agreement. *Gallo*, 83 Cal. App. 5th at 642–43. This case is distinguishable on that point, because the parties' agreement here is silent as to whether it incorporates the CAA. *See* ECF No. 26-1 at 8. *Gallo* also relied in part on its conclusion that section 1281.97 "is a friend to arbitration and not its foe" because it promotes efficient and speedy arbitration through prompt payment, and that it therefore does not stand as an obstacle to the purposes of the FAA. *Gallo*, 81 Cal. App. 5th at 641–45. As discussed below, this Court does not find *Gallo*'s interpretation of the FAA's purpose persuasive.

In October of 2022, Judge Corley issued what might have been the first decision finding either of these statutes preempted, based on her conclusion that section 1281.97 violates the FAA's equal-treatment principle because it makes arbitration agreements unenforceable on grounds not applicable to contracts generally. *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 756 (N.D. Cal. 2022). Judge Corley focused on the fact that section 1281.97 creates a "bright-line rule[]" of breach and waiver that applies only to arbitration agreements, as compared to the "fact-specific inquiries" that would typically apply to untimely payment under other contracts. *Id.* at 757. She found several arguments to the contrary to be irrelevant, including that the statute promotes efficient arbitration, that it vests discretion in a plaintiff to withdraw from arbitration rather than requires a court to invalidate an agreement, and that it is merely a procedural rule. *Id.* at 757–59.

13

What mattered, in Judge Corley's view, was that section 1281.97 creates a rule to render arbitration agreements unenforceable that does not apply to other contracts. *See id.* She relied in part on the Supreme Court's decision in *Morgan v. Sundance, Inc.*, which held that courts may not impose special procedural rules to *favor* enforcement of arbitration agreements as compared to other contracts, overruling an Eighth Circuit doctrine requiring a showing of prejudice before finding waiver of an agreement to arbitrate when the same requirement would not apply to waiver of other contracts. *Morgan*, 596 U.S. 411, 417–19 (2022); *see Belyea*, 637 F. Supp. 3d at 757. "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418. Accordingly, even if sections 1281.97 and 1281.98 serve to promote efficient arbitration, they still violate the FAA's equal treatment principle, because they condition enforceability on a rule that applies only to arbitration. "An arbitration-specific rule incentivizing arbitration by threatening invalidity or unenforceability fairs no better under 9 U.S.C. § 2 than a rule undermining arbitration via the same means." *Belyea*, 637 F. Supp. 3d at 757.

Three decisions from this district in the wake of *Belyea* have followed Judge Corley's reasoning to hold section 1281.97 and/or section 1281.98 preempted. *Burgos v. Citibank, N.A.*, No. 23-cv-01907-AMO, 2024 WL 3875775, at *5 (N.D. Cal. Aug. 16, 2024); *Miller v. Plex, Inc.*, No. 22-cv-05015-SVK, 2024 WL 348820, at *5 (N.D. Cal. Jan. 30, 2024); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718-SK, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023).[8] One published California appellate decision has also followed *Belyea* to hold that section 1281.97 is preempted in cases governed by the FAA, if the parties have not expressly agreed to follow the CAA instead. *Hernandez v. Sohnen Enterprises, Inc.*, 102 Cal. App. 5th 222, 243 (2024).[9]

---

[8] In a subsequent decision in the same case, Judge Kim distinguished *Belyea* after the AAA had terminated the arbitration under its rules (which incorporated the California statutes), holding that the court need not address preemption where the arbitrator applied its own rules to find that a party's late payment constituted default. *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1160–61 (N.D. Cal. 2023).

[9] According to that court, where "parties expressly agree to apply the CAA, or agree to apply California law, including California's arbitration rules, then the state arbitration laws will not be preempted by the FAA," and where "parties agree to apply the FAA's procedural provisions, rather than the procedures of the CAA, then the state arbitration procedures do not apply and there is no preemption issue." *Hernandez*, 102 Cal. App. 5th at 240. *Hernandez* addressed preemption

14

Although some cases have continued to follow *Gallo* without addressing *Belyea*—*e.g.*, *Suarez v. Superior Ct.*, 99 Cal. App. 5th 32, 41 (2024)—this Court is aware of only one decision that expressly considered and disagreed with Judge Corley's analysis: *Keeton v. Tesla, Inc.*, 103 Cal. App. 5th 26, *review granted*, 555 P.3d 2 (Cal. 2024).[10]

Like *Gallo*, the *Keeton* court rested heavily on the Supreme Court's 1989 *Volt* decision allowing application of a California statute that allowed courts to stay arbitration pending resolution of related litigation that was not subject to an arbitration agreement, in a case where the parties to arbitration had specifically agreed to apply California's arbitration law. *Id.* at 38–39, 40 (addressing *Volt*, 489 U.S. 468). *Keeton* noted that the statute at issue in *Volt*—which the Supreme Court declined to invalidate—also grants courts discretion to *refuse to enforce* arbitration agreements where there is related parallel litigation involving one of the parties. *Id.* at 38–39 (citing Cal. Civ. Proc. Code § 1281.2(c)). But the Supreme Court did not consider that particular provision, instead only holding that the FAA did "not prevent application of . . . § 1281.2(c) to *stay arbitration* where, as here, the parties have agreed to arbitrate in accordance with California law." *Volt*, 489 U.S. at 477 (emphasis added). A subsequent Supreme Court decision emphasized the distinction: "The state rule examined in *Volt* determined *only the efficient order of proceedings*; it did not affect the enforceability of the arbitration agreement itself." *Doctor's Assocs.*, 517 U.S. at 688 (emphasis added).

The court in *Keeton* stated the following rule: "As *Volt* makes clear, in deciding whether a procedural rule discriminates against arbitration, it is not enough that the rule treats arbitration contracts differently than other types of contracts. Rather, the question is whether application of

---

only as an alternative to its primary holding that section 1281.97 simply did not apply because the parties agreed to arbitrate under the FAA. *Id.* The parties' agreement here does not expressly incorporate either the FAA or the CAA, *see* ECF No. 26-1 at 8, and neither party argues that the Court can avoid the question of preemption based on an implied choice of one law or the other. *See* ECF No. 26 at 10–12; ECF No. 27 at 9–14; ECF No. 30 at 4–5 (both parties' arguments on the merits of preemption).

[10] In one other case that followed *Gallo*, a dissent cited *Belyea* as a "devastating critique" of the majority's holding, but the majority opinion did not address it. *See generally*, *Hohenshelt v. Superior Court*, 99 Cal. App. 5th 1319, *review granted*, 549 P.3d 143 (Cal. 2024). The California Supreme Court has granted review of both *Hohenshelt* and *Keeton*, rendering those cases non-precedential within the state court system. *See* Cal. Rule of Court 8.1115(e)(1).

15

the rule 'would undermine the goals and policies of the FAA.'" *Keeton*, 103 Cal. App. 5th at 40. But in *Docter's Associates*, the Supreme Court expressly rejected nearly that exact framing of its *Volt* decision:

> As the Montana Supreme Court comprehended *Volt*, the proper inquiry here should focus not on the bare words of § 2, but on this question: Would the application of Montana's notice requirement, contained in § 27–5–114(4), "undermine the goals and policies of the FAA."
>
> . . .
>
> Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts. Montana's § 27–5–114(4) directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. . . .
>
> The Montana Supreme Court misread our *Volt* decision and therefore reached a conclusion in this case at odds with our rulings. . . .

*Doctor's Assocs.*, 517 U.S. at 685–88 (cleaned up). The Supreme Court held that the Montana law conflicted with the "goals and policies of the FAA"—specifically, § 2's equal-treatment clause—precisely *because* it "place[d] arbitration agreements in a class apart from 'any contract,' and singularly limit[ed] their validity," regardless of whether it served laudable underlying goals like ensuring that parties are sufficiently informed about their agreement to arbitrate. *Id.* at 688.

At the hearing, Russell's counsel argued for the first time that section 1281.98's standard for material breach resembles the test for a contract where time is of the essence, an argument that does not appear in Russell's briefs. The purpose of the statute, however, is to impose an arbitration-specific test, bypassing courts' normal consideration of whether parties intended that time is of the essence and what remedy should result for a late payment. The statute is written as a bright-line rule in which failure to comply with the deadline is pre-determined to be a material breach that results in waiver of the arbitration agreement. Cal. Civ. Proc. Code § 1281.98(a)(1). As California courts have acknowledged even while finding no preemption, section 1218.98 and "section 1281.97 appl[y] a different rule for material breach than applies under generally

16

1   applicable contract law." *Espinoza*, 83 Cal. App. 5th at 784 (citing *Gallo*, 81 Cal. App. 5th at
2   644–45).
3       By creating a defense that renders arbitration agreements no longer "valid, irrevocable, and
4   enforceable" on grounds that do not apply to "any contract," these statutes violate the FAA's
5   equal-treatment clause, and are therefore preempted. *See* 9 U.S.C. § 2; *Belyea*, 637 F. Supp. 3d at
6   756–59. Russell's Motion, which relies entirely on Siemens's purported violation of section
7   1281.98, must therefore be DENIED. *Cf. Belyea*, 637 F. Supp. 3d at 760–61 (addressing generally
8   applicable principles of breach and waiver presented in that case, which Russell has not asserted
9   here).

   **C.   *Sink* Is Not to the Contrary**

   In *Sink v. Aden Enterprises, Inc.*, the Ninth Circuit held that the FAA's purpose of
   promoting "efficient and expeditious resolution of claims" is "not served by requiring a district
   court to enter an order returning parties to arbitration upon the motion of a party that is already in
   default." 352 F.3d 1197, 1201 (9th Cir. 2003). An arbitrator in that case had "entered an Order
   finding [the defendant] to be in default in the arbitration proceeding" based on nonpayment of
   fees. *Id.* at 1999. The panel affirmed the district court's conclusion (based on the arbitrator's
   order) that the defendant had defaulted and the plaintiff could therefore proceed in court. *Id.* at
   1999–2000. The panel also held that the FAA did not require the district court to compel further
   arbitration when the defendant represented that it had obtained the funds it needed to pay the
   arbitrator. *Id.* at 1200–01.

   *Sink* did not address sections 1281.97 and 1281.98, because they did not yet exist when it
   was decided.[11] To the contrary, *Sink* held that a party who has been found to have defaulted in
   arbitration—under a Black's Law Dictionary definition of "default," *id.* at 1199 n.2—cannot still
   rely on the same arbitration agreement under which it defaulted to compel further arbitration. *See
   id.* at 1200–01. Rather than suggest that states can enact arbitration-specific rules for what
   constitutes default or material breach, the court followed the FAA's clear language that litigation

---

[11] *Sink* was, in fact, "the impetus for" section 1281.97 and section 1281.98's enactment. *Gallo*, 81 Cal. App. 5th at 646.

17

1   can be stayed pending arbitration only if "the applicant for the stay is not in default in proceeding
2   with such arbitration," *id.* at 1200 (quoting 9 U.S.C. § 3), and reached a result consistent with the
3   FAA's recognition that arbitration agreements may be found unenforceable "upon such grounds as
4   exist at law or in equity for the revocation of any contract," *see* 9 U.S.C. § 2.  Accordingly, while
5   *Sink* indicates that litigation may resume after an arbitrator finds a party in default for nonpayment
6   under the arbitrator's own rules or basic contract principles, it does not save California's
7   arbitration-specific statute on which Russell bases his argument for default.

**IV.  CONCLUSION**

For the reasons discussed above, Russell's Motion to vacate this Court's previous Order staying the case and referring the parties to arbitration is DENIED.  This Order is without prejudice to any argument that Russell might make to the arbitrator regarding the consequences of Siemens's delayed payment under JAMS's rules or generally applicable contract principles, or to Russell bringing a renewed motion to lift the stay on this case if the arbitrator either refuses to proceed with arbitration or finds that Siemens defaulted.

**IT IS SO ORDERED.**

Dated: October 21, 2024

LISA J. CISNEROS
United States Magistrate Judge